United States Court of Appeals,

Fifth Circuit.

No. 92-3851.

The HOME INSURANCE COMPANY, Plaintiff-Appellant,

v.

Michael J. MATTHEWS, et al., Defendants-Appellees.

Aug. 20, 1993.

Appeal from the United States District Court for the Middle District of Louisiana.

Before WISDOM, DAVIS, and SMITH, Circuit Judges.

WISDOM, Circuit Judge.

The question in this case is whether an insurance company waived its right to void a legal malpractice policy because the insured misrepresented his knowledge of malpractice claims against him. In this diversity case, Louisiana authorities compel this Court to hold that the insurer has waived its right. We AFFIRM the judgment of the district court.

I.

Michael J. Matthews, a Louisiana lawyer and a notary public, applied to The Home Insurance Company (Home Insurance) for malpractice insurance. A policy was issued to him on August 28, 1986 for one year. A second application to renew the policy was signed July 3, 1987, and this policy was also for one year. Both the original policy application and the second application contained the following question:

> Does any lawyer in question 5(A) [Matthews] know of any circumstance, act, error, or omission that could result in a professional liability claim against him or his predecessor in business?

On both occasions, Matthews answered this question "No".

On September 28, 1988, Matthews sought to renew his policy for one year. He attached to his renewal application[1] sixteen supplemental claims forms relating to settlement disputes with clients.

---

[1] The 1988 renewal application in the record, unlike the 1986 or 1987 applications, does not inquire as to whether the attorney knows of any circumstance, act, error, or omission that could result in a malpractice claim.

Because of the many attached claims, Home Insurance declined to renew Matthews' policy. It did not, however, terminate the policy. Notice of non-renewal was mailed to Matthews on November 8, 1988.

Under Louisiana law, if a commercial insurance policy is not renewed, "coverage shall remain in effect under the same terms and conditions until sixty days after notice is mailed or delivered".[2] Home Insurance continued the policy during this period, and Matthews paid a pro-rated premium on or about January 25, 1989.

The insurance contract in pertinent part provides:

If the company shall cancel or refuse to renew the policy for reasons other than the named insured's non-payment of premiums and/or deductibles or non-compliance with the terms and conditions of this policy, then the named insured upon payment of an additional premium as set forth herein shall have the option to extend the insurance afforded by this policy subject otherwise to its terms, limit of liability, exclusions and conditions, to apply to claims first made against the insured during (a) 12 months, (b) 24 months, or (c) 36 months, as elected by the named insured, following immediately upon the effective date of such termination, but only by reason of any act, error or omission in professional services rendered before such effective termination date and otherwise covered by this insurance.

Matthews purchased this optional reporting period for the 36 month term on or about January 25, 1989.

On July 11, 1989, Home Insurance sought a declaratory judgment that the policies and the extended reporting period coverage be declared void *ab initio* based upon Matthews' negative answer to the question of whether he knew of any reason to suspect that a malpractice claim could be brought against him. Matthews had acted dishonestly in the practice of law. We need not document his multiple transgressions; Matthews pleaded guilty on June 20, 1988 to five counts of forgery and five counts of felony theft of clients' funds. Two of the guilty pleas involved conduct that occurred before Matthews signed the 1986 application, and two more involved conduct that occurred before the 1987 renewal application. On October 27, 1988, the Louisiana Supreme Court disbarred Matthews.

Matthews asserted an affirmative defense to Home Insurance's claim of no coverage. At trial, the company made a motion in limine to strike Matthews' affirmative defense because, Home

---

[2]R.S. 22:636.4 D.(1).

Insurance argued, Federal Rule of Civil Procedure 8(c) had not been complied with. The district court denied this motion. At the close of Home Insurance's case-in-chief, Matthews moved for judgment as a matter of law. The district court granted this motion and ruled that as a matter of law, Home Insurance had waived its right to assert a defense to liability based on Matthews' responses on his insurance applications. This appeal followed.

## II.

Federal Rule of Civil Procedure 8(c) requires that

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

Matthews raised an affirmative defense in the pre-trial stipulations of April 13, 1992:

> 1. The Home is equitably estopped by its acts and/or the acts of its agent, Gilsbar, Inc., from declaring the policy it issued to Matthews null and void *ab initio,* since The Home extended Matthews' reporting period and his policy period for minimal premiums after The Home and Gilsbar had been notified of sixteen claims pending against Matthews for his alleged failure to disburse settlement proceeds to this[sic] clients and/or for his alleged unauthorized settlement of his clients' cases.

Matthews' defense, however, is not one of estoppel but waiver. Indeed, he perhaps realized this when preparing the special jury instructions. There, under the general heading "Estoppel", part a. is titled "Waiver". In the most frequently cited commentary on waiver and estoppel in Louisiana insurance law, Matthews' defense that Home Insurance accepted premiums is discussed as waiver.[3] This commentary, however, acknowledges that, "Much confusion surrounds the principles of waiver and estoppel in insurance law. Many courts have used the two terms interchangeably, while others have considered waiver and estoppel as being complementary, that is, that waiver must be supported

---

[3]Comment, *Waiver and Estoppel in Louisiana Insurance Law,* 22 La.L.Rev. 202, 204 (1961) ("It is well established in Louisiana and elsewhere that acceptance of premium payments by an insurer after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privileges").

by estoppel, or estoppel is the result of waiver."[4]  On this very point of acceptance of premiums, although many Louisiana courts analyze the problem in terms of waiver,[5] Justice Tate (as he then was) wrote for the Louisiana Supreme Court that, "under the circumstances here shown, the insurer is estopped from denying liability ... when it has accepted premiums with knowledge...."[6]  Moreover, in a case involving a misrepresentation by the insured which was later discovered by the insurer who nevertheless chose to continue to receive premium payments, the Louisiana Supreme Court discussed the issue in terms of both waiver and estoppel.[7]  Even Home Insurance which argues that it was prejudiced by the failure of Matthews to designate the defence as waiver rather than estoppel, on one occasion in its brief blurs the distinction between the two:  "the doctrine of estoppel or waiver is recognized as being founded upon equity...."  (Brief at 13).

If we were concerned only with notice pleading under rule 8(b), this Court would excuse the mislabelling on the principle that the rules "contemplate the greatest liberality in pleading".[8]  The words "set forth affirmatively" in rule 8(c), however, would seem to demand more than mere notice. This Court, in the early years under the regime of the new federal rules, held that the liberal spirit also applied to rule 8(c):  "Under our very liberal rules of pleading, although a plea of contributory negligence must be affirmatively set forth, it need not be predicated upon extensive factual allegations.  A plea that simply states that complainant was guilty of contributory negligence, as in the case at bar, is sufficient."[9]  In that case, the defendant had at least set forth the name of the affirmative defense he was pleading.  In this case Matthews pleaded *estoppel* when *waiver* was the proper term.  The Court of Appeals for the Second Circuit once noted in the context of an affirmative

---

[4]*Comment* at 211.

[5]*See e.g. Monroe Air Park No. 1 v. American Aviation & Gen. Ins. Co.,* 41 So.2d 795, 798-99 (La.App. 2 Cir.1949) (Even in this case, although the court's analysis is in terms of waiver, it uses the word "estoppel" on one occasion).

[6]*Bonadona v. Guccione,* 362 So.2d 740, 742 (La.1978).

[7]*Union National Bank v. Manhattan Life Insurance Co.,* 26 So. 800 (La.1899).

[8]*Dairy Engineering Corp. v. De-Raef Corp.,* 2 F.R.D. 378, 379 (W.D.Mo.1942).

[9]*American Motorists Ins. Co. v. Napoli,* 166 F.2d 24, 26 (5th Cir.1948).

defense that the pleading seemed "to state the defense of estoppel rather than waiver".[10] In that case, however, the defendant merely pleaded bad faith; it was the district court which *sua sponte* raised the affirmative defense, and the Court held that the lack of notice prejudiced the plaintiff.

In reading rule 8(c), this Court attempts "to do substantial justice" and will forgive "technical failure to comply precisely with Rule 8(c)" if the matter is raised in such a manner so as not to "result in unfair surprise".[11] In *Bull's Corner Restaurant,* this Court held that when the defendant sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise, the requirements of rule 8(c) were satisfied.[12]

Home Insurance argues that it is prejudiced by substituting waiver for estoppel. Home Insurance is entirely correct that the proper defense was waiver, and that the elements of waiver and estoppel are different. Justice Dennis, for the Louisiana Supreme Court, defined waiver as "the intentional relinquishment of a known power or privilege".[13] Equitable estoppel is founded on detrimental reliance on the representations of the other party.[14] Two factors here, however, mitigate any prejudice. Matthews, while labelling the defense as estoppel, set forth the facts which constituted Home Insurance's waiver. Moreover, as pointed out, the Louisiana courts have not been clear or consistent in their use of the two terms in insurance law. We can hardly expect Matthews to disregard the language of the Louisiana Supreme Court. If the two defenses had been clearly distinguished by the Louisiana courts, we would perhaps be more receptive to Home Insurance's

[10]*Doubleday & Co., Inc. v. Curtis,* 763 F.2d 495, 502 (2nd Cir.1985) *cert. dismissed* 474 U.S. 912, 106 S.Ct. 282, 88 L.Ed.2d 247 (1985).

[11]*Allied Chemical Corp. v. Mackay,* 695 F.2d 854, 855-6 (5th Cir.1983).

[12]*Bull's Corner Rest. v. Dir., Fed. Emer. Mgmt. Agcy.,* 759 F.2d 500, 502 (5th Cir.1985).

[13]*Tate v. Charles Aguillard Ins. & Real Est.,* 508 So.2d 1371, 1373 (La.1987).

[14]Estoppel occurs when "a party has been induced to rely upon asserted facts or representations and thereby moved or acted to his detriment, or in a manner he would not have done but for his reliance upon such asserted facts or representations". *Goodwin v. Federal Mut. Ins. Co.,* 180 So. 662, 666 (La.App. 2 Cir.1938). *Robbins Tire & Rubber v. Winnfield Retread,* 577 So.2d 1189, 1991 (La.App. 2 Cir.1991) sets forth the three elements of equitable estoppel: "(1) a representation by conduct or words; (2) justifiable reliance; and (3) a change of position to one's detriment because of the reliance."

claims of prejudice. Here, where Matthews stated the pertinent facts and applied a label which the Louisiana courts have applied, we hold that Matthews satisfied rule 8(c).

III.

We turn to the merits of Matthews' defense. It is clear that under Louisiana law, the "acceptance of premium payments by an insurer after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privilege".[15] This was the Louisiana law when it was written in 1961; it was the law when Justice Tate wrote that acceptance of premiums with knowledge will estop the insurer from denying coverage; and the Louisiana courts have recently reaffirmed this principle in *Swain v. Life Insurance Co. of Louisiana* repeating language quoted above.[16]

Swain purchased life insurance and represented on the policy that he was in "sound health". In fact, five years earlier Swain had triple by-pass surgery, three years earlier he was diagnosed as having Laennec's cirrhosis, and, three weeks before signing the policy, he had hip surgery. Although Swain was on crutches when he signed the policy, the agent never questioned Swain about his health. The acceptance of premiums when the agent had reason to suspect that Swain may not have been in sound health, yet did not initiate further inquiry, led the district court to hold that the insurance company waived any power or privilege it might have to avoid coverage based on Swain's representation.

A century earlier, Mr. Justice Gray writing for the United States Supreme Court stated that the question before the Court in *Phoenix Mutual Life Insurance Co. v. Raddin*[17] was "whether, if insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that

---

[15]*Comment* at 204.

[16]537 So.2d 1297, 1300 (La.App. 2 Cir.1989) *cert. denied* 541 So.2d 895 (La.1989).

[17]120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644 (1887).

breach."[18]  His answer was, "Upon principle and authority, there can be no doubt that it is."[19]  The

Louisiana Supreme Court subsequently spoke with equal certainty.  In *Union National Bank v.*

*Manhattan Life Insurance Co.,*[20] the court held that:

> If at the time it issued the policy the company did not have knowledge of the untruthfulness of the answer of the insured, but subsequently acquired this knowledge, and yet thereafter accepted payment of a premium due on the policy, this act could not be considered otherwise than as an election on its part to continue the policy in force, and it would not be heard to set up its avoidance because of this breach of warranty.[21]

Other courts have also reached the same conclusion Justice Gray reached.[22]

Home Insurance had the power of termination on Matthews' failure to comply with the terms

of the policy;[23] dishonest answers in his application constitute a failure to comply with the terms and

conditions of the policy.[24]  Termination for this reason would have eliminated Home Insurance's

burden of offering the optional reporting period.[25]  Although Louisiana has provided some protections

for those applicants who make minor errors or omissions in filling out their policies or who lack the

intent to deceive,[26] these protections would not have prevented the company from cancelling the

---

[18]*Raddin* at 196, 7 S.Ct. at 506.

[19]*Id.*

[20]26 So. 800 (La.1899).

[21]*Union* at 811.

[22]*See e.g. German-American Mut. Life Ass'n v. Farley,* 102 Ga. 720, 29 S.E. 615, 628-29 (1897);  *Sovereign Camp, W.O.W. v. Bowman,* 40 Ga.App. 536, 150 S.E. 436, 437-38 (1929);  *Peninsular Casualty Co. v. McCloud,* 47 Ga.App. 316, 170 S.E. 396, 397 (1933);  *Johnson v. Massachusetts Benefit Ass'n,* 9 Kan.App. 238, 59 P. 669, 671 (1900);  *Foremost Guar. Corp. v. Meritor Sav. Bank,* 910 F.2d 118, 129 (4th Cir.1990).

[23]Transcript at 158.

[24]*Id.*

[25]*Id.*

[26]La.Rev.Stat.Ann. § 22:619 in pertinent part provides:

> A. Except as provided in Subsection B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

policy in this case.  Matthews, shortly after representing in his application that he did not know of any circumstance, act, error, or omission that could lead to a claim against him, pleaded guilty to felony theft of client funds.  Although the policy does not cover deliberately fraudulent or criminal acts or omissions, his failure to acknowledge that malpractice claims could result in the light of his professional conduct is sufficient to permit Home Insurance to have cancelled the policy.

Therefore, we must now inquire whether Home Insurance had knowledge when it accepted the premiums.  The parties discuss at length whether Home Insurance had sufficient knowledge in January 1989 so as not to issue the additional reporting period coverage.  Adequate information was sent to the insurance agent, but it is unclear when Home Insurance was made aware of Matthews' transgressions.  We, however, need not reach the tricky agency issues raised by this, for as the district court noted, the company had sufficient information to prompt a thorough investigation back in late October or early November 1988.  When Matthews attached the sixteen supplemental claims to his renewal application, Home Insurance should have investigated promptly.  Further, one of these claims noted that it "is not being made by claimant but by district attorney's office of 23rd J.D.C. in Ascension Parish".  In June 1988, Matthews had pleaded guilty to felony theft and forgery, and in October 1988, he was disbarred.  This information would not have been difficult to learn.  That Matthews had so many claims against him and that the district attorney was pursuing one of them should have placed Home Insurance on notice that Matthews misrepresented his record when he had twice previously denied knowledge of any "circumstance, act, error, or omission that could result in a professional liability claim".

Home Insurance argues that, "It is an unfair burden to place upon an insurer that it must immediately, without consultation and without looking into all of the facts and circumstances of an insured's activity, assert its right of forfeiture ... would be tantamount to bad faith and, perhaps, defamation if any of said facts turned out to be untrue."[27]  That is not this case.  Home Insurance had ample time to investigate Matthews between the beginning of November 1988 and late January 1989 when the reporting period was extended for three years.  Its failure to do so when it had reason to

---

[27]Brief at 16-17.

suspect that Matthews had misrepresented his knowledge of possible claims and its subsequent acceptance of premium payments amount to a waiver of its right to avoid coverage.

IV.

We AFFIRM the judgment of the district court.