27 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ellen C. JONES, Plaintiff-Appellee/Cross-Appellant,
v.
JACKSON NATIONAL LIFE INSURANCE COMPANY,
Defendant-Appellant/Cross-Appellee.
 Nos. 93-1503, 93-1528.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1994.
 
 Before: MARTIN and JONES, Circuit Judges; and CONTIE, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 In this diversity action arising out of the denial of liability under a life insurance policy, Jackson National Life Insurance Company appeals from the district court's grant of summary judgment in favor of Ellen C. Jones on her breach of contract claim. Mrs. Jones, in turn, appeals the district court's rejection of her claim for interest under the Michigan Uniform Trade Practices Act. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * Dennis M. Jones died on March 15, 1991, at the age of 45. He is survived by his wife, Ellen C. Jones, and three children. Prior to his death, Mr. Jones was employed as an insurance agent with Insurance and Risk Management, Inc., of Muncie, Indiana.
 
 
 3
 During the summer of 1990, Mr. Jones consulted with his colleague, Terry L. Lothamer, regarding the purchase of additional life insurance. As an independent agent for Jackson National Life Insurance Company, Mr. Lothamer was authorized to solicit applications on behalf of the company. At Mr. Lothamer's suggestion, Mr. Jones applied for a $500,000 standard policy with Jackson National.
 
 
 4
 The application called for a detailed review of Mr. Jones' medical history. As relevant here, Mr. Jones revealed that he had a hiatal hernia and was taking the prescription medicine Zantac. In response to a question asking if he had undergone diagnostic testing during the previous five years, Mr. Jones listed only an April 1990 urine test. He had, in fact, also undergone an upper gastrointestinal tract x-ray examination on April 16, 1990, which revealed a stricture, or narrowing, of his esophagus. Although he was notified of the x-ray examination results on April 17, Mr. Jones failed to disclose this test on his Jackson National application. He did, however, list the name of his treating physician, Dr. Joseph I. Pippenger, on the form.
 
 
 5
 On July 27, one day after completing the Jackson National application, Mr. Jones kept an appointment with Dr. Pippenger. Given the results of the upper gastrointestinal tract examination and the fact that Mr. Jones continued to suffer from heartburn and swallowing problems, Dr. Pippenger advised Jones to undergo an esophagoscopy, which involves placing a fiberoptic tube down a patient's esophagus to inspect its condition. Mr. Jones received word on August 14 that the esophagoscopy procedure had been scheduled for September 13. He did not apprise Jackson National of this development.
 
 
 6
 On September 7, Jackson National notified Mr. Lothamer that Mr. Jones' application had been approved. In response, Mr. Lothamer mailed a $1,030 check to Jackson National on September 10 to cover the annual premium. The next day, Jackson National issued Mr. Jones' policy and mailed it to Mr. Lothamer. Mr. Lothamer received the policy on the morning of September 13.
 
 
 7
 That afternoon, Mr. Jones underwent an esophagoscopy examination at Methodist Hospital in Indianapolis, Indiana. After visually inspecting Jones' esophagus and taking biopsy samples, the consulting specialist, Dr. Lee G. Jordan, concluded preliminarily that a cancerous tumor was causing the esophageal stricture. Following a computerized tomography scan and a discussion of his prognosis with Dr. Jordan, Mr. Jones went home.
 
 
 8
 Later that evening, Mr. Jones began to experience severe chest pains and was taken to the emergency room at Ball Memorial Hospital in Muncie. The next day, Dr. Jordan determined that Mr. Jones suffered from a perforated esophagus and transferred him to Methodist Hospital in Indianapolis. A few hours later, exploratory surgery revealed that Mr. Jones' digestive tract was riddled with tumors. Doctors then removed portions of Jones' esophagus, stomach, intestine, and spleen. As Mr. Jones recovered from surgery in the hospital, Mr. Lothamer hand-delivered the Jackson National policy to him on September 20. Mr. Jones was released from Methodist Hospital on October 5.
 
 
 9
 Treatment proved unavailing and Mr. Jones died on March 15, 1991. Ten days later, Ellen Jones filed a claim for life insurance benefits with Jackson National. During the investigation of the claim that followed, Jackson National obtained copies of and reviewed Mr. Jones' medical records. Shortly thereafter, the company denied coverage. In a letter dated May 23, Jackson National offered a single reason for its denial of benefits: Mr. Jones' September 14 cancer diagnosis predated Mr. Lothamer's September 20 delivery of the policy.
 
 
 10
 Ellen Jones filed suit in federal court on February 21, 1992. In her four-count complaint, Mrs. Jones alleged that Jackson National breached its contract to pay benefits under the life insurance policy, negligently delayed the processing of Mr. Jones' application, and refused to pay benefits on a timely basis in violation of the Michigan Uniform Trade Practices Act. Jackson National, in turn, asserted third-party claims against Mr. Lothamer on negligence, breach of fiduciary duty, and silent fraud grounds.
 
 
 11
 The parties filed cross-motions for summary judgment in January 1993. Following a March 1 hearing, the district court dismissed all claims except Mrs. Jones' breach of contract claim against Jackson National. Shortly thereafter, the district court concluded, in a closely reasoned opinion dated March 19, that Jackson National had abandoned its original policy-delivery defense and waived all other defenses to the breach of contract claim.
 
 
 12
 As the district court initially observed, Jackson National's defense based on the fact that Mr. Jones' September 14 cancer diagnosis predated Mr. Lothamer's September 20 delivery of the policy was largely vitiated by this Court's decision in Dohanyos v. Prudential Ins. Co., 952 F.2d 947 (6th Cir.1992). In Dohanyos, the Court concluded that, under Michigan law, a life insurance company was estopped from relying on a delivery requirement to defeat liability where the company had mailed the policy to its agent, but the agent was delinquent in delivering it to the insured. Id. at 950. Because Mr. Lothamer received the policy on September 13, and could have delivered it to Mr. Jones before his September 14 cancer diagnosis, the district court determined that Jackson National could no longer rely on its initial defense.
 
 
 13
 With regard to the "changed answer" and "material misrepresentation" defenses asserted by Jackson National, the district court concluded that the company waived both when it failed to assert them in its original denial of coverage letter. According to the district court:
 
 
 14
 Jackson National, by denying plaintiff's claim for one specified reason only, notwithstanding its knowledge of other potential reasons, is deemed to have intentionally relinquished its right to later assert those other reasons, irrespective of whether plaintiff would be unfairly prejudiced thereby.
 
 
 15
 Finding that no genuine issues of material fact remained, the court entered summary judgment in favor of Mrs. Jones on her breach of contract claim. This timely appeal followed.
 
 II
 
 16
 This Court reviews a grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The Court views all evidence before it in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In this diversity case, the parties agree that Michigan law governs.
 
 III
 
 17
 Before this Court, Jackson National vigorously argues that the district court erred in concluding that the company waived its "changed answer" and "material misrepresentation" defenses, which were premised on Jones' failure to disclose relevant medical information. In support of this claim, Jackson National presses two separate contentions: (1) the doctrines of waiver and estoppel cannot preclude the insurer's assertion of its defenses because Mrs. Jones is unable to demonstrate she was prejudiced by any delay, and (2) to preclude Jackson National from asserting its defenses would improperly expand coverage under the policy.
 
 
 18
 * Under Michigan law, it is well established that an insurer's denial of liability on specific grounds constitutes a waiver of any additional defenses. J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1489 (6th Cir.1991). In the words of the Michigan Supreme Court:
 
 
 19
 This court has many times held, and it must be accepted as the settled law of this State, that, when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all of the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice.
 
 
 20
 Smith v. Grange Mutual Fire Ins. Co., 208 N.W. 145, 146-47 (Mich.1926).
 
 
 21
 The Michigan Supreme Court applied this waiver rule in Taylor v. Supreme Lodge of Columbian League, 97 N.W. 680 (Mich.1903), a case strikingly similar to the one before us. In Taylor, the insured falsely represented in his application for insurance that "he had had no illness within the preceding 10 years, and had not consulted a physician." Id. at 681. Despite such misrepresentations, the court concluded that the policy beneficiary was entitled to payment because "a waiver of this defense was clearly made out." Id. As the Court observed:
 
 
 22
 After the death of Mr. Taylor, it appears that the defendant's officers were in correspondence with Dr. Pitcher, and were informed by him that he had treated Mr. Taylor for an acute ailment some four or five years earlier. With this information before them, they wrote plaintiff's attorney, in response to a letter demanding a settlement of the claim, declining on the distinct ground that John I. Taylor never paid an assessment. No mention of any other defense is made, the ground of refusal being distinctly stated that the deceased never became a member of the order. This constituted a waiver of other known defenses, and defendant will not, after expense of suit has been incurred, be permitted to shift ground, and assert additional grounds of defense.
 
 
 23
 Id.
 
 
 24
 Although Jackson National concedes that it relied on a single defense in denying coverage even though it had learned of additional grounds, the company contends the waiver rule is inapplicable here because Mrs. Jones has failed to demonstrate that she was prejudiced by the insurer's delayed assertion of its other defenses. In support of this argument, Jackson National relies heavily on Ruddock v. Detroit Life Ins. Co., 177 N.W. 242, 248 (Mich.1920), which observed:
 
 
 25
 The cases where the doctrine of waiver, of estoppel, has been applied have largely been cases where the insurance companies have relied on a forfeiture of the contract, upon breaches of the warranties and conditions to work such forfeitures; and in many such cases this court and other courts of last resort have held that if the companies have led the other party, to his prejudice, to his expense, to understand that such forfeitures, such breaches of warranties and conditions would not be insisted upon, then the companies would be estopped from asserting such defenses.
 
 
 26
 See also Lee v. Evergreen Regency Coop. & Management Sys., Inc., 390 N.W.2d 183, 186 (Mich.Ct.App.1986) (recognizing that "the inequity of placing [the insurance company] in the position of being liable for a claim outside the scope of its policy is not outweighed by any prejudice to plaintiff"). A careful review of the cited authorities, however, convinces us that the district court correctly concluded that an affirmative showing of prejudice to the insured is not a prerequisite to application of the waiver doctrine under Michigan law.
 
 
 27
 As the district court recognized, waiver and estoppel are separate, albeit related, doctrines. While the terms are often used interchangeably by courts and commentators alike, each conveys a distinct meaning. Waiver, defined as the voluntary and intentional relinquishment of a known right, arises from a unilateral, affirmative act by the insurer. Loyola Univ. of Chicago v. Humana Ins. Co., 996 F.2d 895, 901 (7th Cir.1993); 7 George J. Couch, COUCH CYCLOPEDIA OF INSURANCE LAW Sec. 35.250 (2d ed. 1985). Estoppel, on the other hand, arises by operation of law when the insured detrimentally relies on acts or representations of the insurer that are inconsistent with the terms of the policy. See Home Ins. Co. v. Matthews, 998 F.2d 305, 309 & n. 14 (5th Cir.1993) ("Equitable estoppel is founded on detrimental reliance on the representations of the other party."). Classifying Jackson National's circumscribed denial of liability in the instant case as a waiver, the district court correctly concluded that Michigan's long standing waiver rule applied, irrespective of whether or not Mrs. Jones made an affirmative showing of prejudice.
 
 
 28
 Despite Jackson National's attempt to persuade us otherwise, we remain unconvinced that we should disregard the holding of Taylor. When faced with precisely the same factual situation--the insurer extensively reviewed the insured's medical history and learned of several possible defenses to the claim, yet chose to rely on a single ground of refusal--the state supreme court concluded that a waiver of any additional defenses "was clearly made out." Taylor, 97 N.W. at 681. In light of this pronouncement, the district court correctly resolved the issue of state law presented here.
 
 B
 
 29
 Even if the waiver doctrine does apply, Jackson National contends that it is entitled to relief from its application because the rule is "not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom." Lee, 390 N.W.2d at 185 (quoting 1 A.L.R.3d 1139, 1144); see also Ruddock, 177 N.W. at 248 (doctrine should not be invoked where it "would make this contract of insurance cover a loss it never covered by its terms" or "create a liability not created by the contract and never assumed by the defendant under the terms of the policy"). Because Jackson National would not have issued the policy if it had known that Mr. Jones misrepresented his medical history, the company contends that application of the waiver doctrine will force it to cover a risk it had not contemplated and for which it had not charged a premium. We are not persuaded.
 
 
 30
 As the district court noted, Mrs. Jones seeks only the payment of benefits under the express terms of the policy agreement and in no way attempts to vary the policy language. Accordingly, there is no undue expansion of coverage within the meaning of Michigan law. Compare Ruddock, 177 N.W. at 248 (after insured died during military service, beneficiaries pressed claim despite express exclusion for risks of military service); Munro v. Boston Ins. Co., 122 N.W.2d 654, 657 (Mich.1963) (court rejected attempt to create liability which arose only after expiration of the policy). Finding no error, we affirm the district court's grant of summary judgment on Mrs. Jones' breach of contract claim.
 
 IV
 
 31
 We turn, finally, to the sole issue raised by Mrs. Jones on cross-appeal. Alleging that her claim for benefits was unreasonably disputed by Jackson National, Mrs. Jones challenges the district court's rejection of her claim for interest under the Michigan Uniform Trade Practices Act. As the district court granted summary judgment in favor of Jackson National on this claim, our review is de novo. Moore, 2 F.3d at 698.
 
 
 32
 An award of penalty interest is appropriate under the Act only when an insurer fails to timely pay a claim that is not "reasonably in dispute." Section 500.2006 of the Act provides, in relevant part:
 
 
 33
 (1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant, the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.
 
 
 34
 The determination of whether a claim was "reasonably in dispute" is a matter for the trial court. All American Life & Cas. Co. v. Oceanic Trade Alliance Council Int'l, Inc., 756 F.2d 474, 482 (6th Cir.), cert. denied, 474 U.S. 819 (1985).
 
 
 35
 In ruling on Mrs. Jones' claim for interest, the district court observed:
 
 
 36
 The Court has devoted a significant discussion to the facts and law surrounding plaintiff's claim for benefits and Jackson National's defenses thereto because resolution of all three defenses turns on rather abstruse subtleties of law. None of the defenses is based on a plainly invalid contract clause or plainly erroneous interpretation of law. There is no indication that Jackson National acted unreasonably or with dilatory motive in denying plaintiff's claim.
 
 
 37
 In light of these findings, the court concluded that the claim was reasonably in dispute and a penalty under the Act was inappropriate.
 
 
 38
 This ruling, Mrs. Jones argues, was erroneous. Relying on Siller v. Employers Ins. of Wausau, 333 N.W.2d 197 (Mich.Ct.App.1983), and Norgan v. American Way Life Ins. Co., 469 N.W.2d 23 (Mich.Ct.App.1991), Mrs. Jones contends that Jackson National must be forced to bear the burden of erroneously interpreting its policy provision regarding delivery. Because Jackson National denied the claim on this basis alone, and persisted in asserting this clearly flawed defense until the March 1993 summary judgment hearing, Mrs. Jones insists that she is entitled to the payment of interest under the Act.
 
 
 39
 We do not agree. The issue of Jackson National's liability under the insurance policy was extensively litigated before both the district court and this Court. Moreover, the record in this case leaves us convinced that Jackson National did not employ dilatory tactics or unreasonably dispute Mrs. Jones' claim. Accordingly, the district court properly concluded that Mrs. Jones was not entitled to an award of interest under the Michigan Uniform Unfair Trade Practices Act.
 
 V
 
 40
 For the foregoing reasons, we affirm the judgment of the district court.