**Frank E. MATINCHEK, Plaintiff,**

v.

**JOHN ALDEN INSURANCE COMPANY, Defendant.**

**Civil Action No. 1: 93–1127.**

United States District Court, M.D. Pennsylvania.

June 27, 1995.

Canario.

10. The first independent examination of Abnathya, coincidentally, was conducted by Dr. Arthur

Barry Alan Kronthal, Harrisburg, PA, Stephen L. Banko, Jr., Reynolds & Havas, Harrisburg, PA, for plaintiff.

Alan R. Boynton, Jr., Jonathan Haig Rudd, McNees, Wallace & Nurick, Harrisburg, PA, for defendant.

## MEMORANDUM

RAMBO, Chief Judge.

### I. *Background*

On October 28, 1991, Frank Matinchek completed an enrollment form for a group health insurance policy with John Alden Life Insurance Company ("John Alden"), which issued a policy to Matinchek on November 1, 1991. On March 10, 1992, John Alden received a claim form for benefits from Matinchek relating to hospitalization and medical treatment received between January and March 1992. (Garvey affidavit at ¶ 5.) Some of the information referenced in Matinchek's claim contained a diagnosis code for diabetes mellitus, which is inconsistent with information provided by Matinchek on the enrollment form. The diabetes code caused John Alden's computer system to automatically suspend processing of the claim and generate a report. *Id.* The report was reviewed by a Claims Examiner and she undertook an investigation of Matinchek's policy. *Id.* On March 29, 1992, John Alden deposited a check from Matinchek for his monthly insurance premium. (Frank Matinchek affidavit, exhibit A.)

On or about April 10, 1992, John Alden received medical records clearly indicating that Matinchek was diagnosed with diabetes mellitus prior to applying for the John Alden policy in October of 1991. On April 14, 1992, having concluded that Matinchek's application contained misrepresentations regrading a preexisting medical condition, the Claims Examiner referred his file to Underwriting Supervisor Kathy Garvey. (Garvey affidavit at ¶¶ 6–7.)

After reviewing Matinchek's medical records, his enrollment form, and John Alden's underwriting guidelines for diabetes, Garvey determined that Matinchek would not have been offered coverage by John Alden if he had fully disclosed his medical history in the enrollment form. (*Id.* at ¶ 8.) Garvey reported this determination to the Claims Department on or before May 1, 1992. (*Id.* at ¶ 16.) On May 1, 1992, John Alden deposited a check from Matinchek for his monthly insurance premium. (Frank Matinchek affidavit, exhibit A.)

On May 6, 1992, Tammy Boldman in the Claims Department completed a "Recession Referral Form" and transmitted it with Matinchek's file to the two directors of the Claims Department, Denise DiCapio–Doon and Laurie Stellmaker. (Boldman affidavit at ¶¶ 3–5 and exhibit B.) DiCapio–Doon approved recession of Matinchek's policy on May 8, 1992, and Stellmaker did the same on May 13, 1992. (*Id.* at ¶¶ 4–5.)

After this approval of recession by both directors, the file was returned to Tammy Boldman in the Claims Department. Boldman sent a letter to Matinchek dated May 14, 1992, which stated:

Dear Mr. Matinchek:

Your charges for expenses have been received.

When we agreed to issue insurance coverage to you, our decision was based on information you supplied us on your Evidence of Insurability card.

We are enclosing a photocopy of your enrollment card. We request that you review it to assure that we have correct and complete information as of the date you signed the enrollment card. If any

changes should be made, please note them directly on the photocopy and sign the photocopy.

If no changes are necessary, indicate that at the bottom of this letter. Please return this letter and the photocopy in the enclosed postage paid return envelope. If we do not receive your response within 14 days, we will assume you have no changes. (Boldman affidavit, exhibit C.) While this letter was in the mail, Boldman sent a letter dated May 15, 1992, to Lynn Cooper Black, Matinchek's insurance agent, notifying Ms. Black that Matinchek's insurance policy was rescinded back to the effective date of November 1, 1991. (*Id.* at exhibit D.) A copy of this letter was not sent to Matinchek. On May 19, 1992, John Alden sent Matinchek a bill dated May 15, 1992, for his regular insurance premium. (Matinchek affidavit at ¶ 19 and exhibit B.) On May 20, 1992, Matinchek was involved in an automobile accident which resulted in his hospitalization. On the same day, Margaret Matinchek notified Ms. Black, the agent through whom Mr. Matinchek obtained the John Alden policy, of the occurrence of the accident. (Margaret Matinchek affidavit at ¶ 3.) At approximately 10:30 a.m. on May 20, 1992, Ms. Black notified John Alden of Matinchek's accident and claim for health benefits. (Black affidavit at ¶¶ 8–9.) Boldman sent Matinchek a letter dated May 21, 1992, notifying him for the first time that the John Alden policy had been rescinded back to the effective date of November 1, 1992. (Boldman affidavit, exhibit I.)

Matinchek filed the instant action seeking to enforce the policy with respect to both the March 1992 and May 1992 claims. John Alden moved for summary judgment on the ground that Matinchek's misrepresentations on the enrollment form permit recession of the policy as a matter of law. In his response to John Alden's motion for summary judgment, Matinchek claimed that there is a genuine issue of material fact as to whether John Alden waived its rights to rescind his policy. In an order dated March 13, 1995, the court denied John Alden's motion for summary judgment and ordered the parties to brief the issues of waiver and estoppel. The court will now turn to those issues.

## II. Discussion

### A. Summary Judgment Standard

The basic summary judgment standards require the moving party to demonstrate through the pleadings, discovery materials, and admissions on file, together with any submitted summary judgment affidavits, that there is no genuine issue as to any material fact that would preclude judgment in its favor as a matter of law. Fed.R.Civ.P. 56(c); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3rd Cir.1987). Only if the affidavits submitted by the party opposing summary judgment are not significantly probative of a factual issue that is material to the case should summary judgment be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Equimark*, 812 F.2d at 144. "Where one party has invoked the power of the court to render a summary judgment against an adversary, Fed.R.Civ.P. 54(c) and 56, when read together, give the court the power to render a summary judgment for the adversary if it is clear that the case warrants that result, even though the adversary has not filed a cross-motion for summary judgment." *Peiffer v. Lebanon School District*, 673 F.Supp. 147, 151–52 (M.D.Pa.1987).

### B. Sufficiency Of The Pleadings

John Alden argues that Plaintiff has waived his right to seek recovery under his claims of waiver and estoppel by failing to raise them in his second amended complaint. It maintains that as a consequence of this alleged failure it did not pursue discovery on these issues. In his second amended complaint, Plaintiff alleges the following:

8. Thereafter, John Alden continued to bill Mr. Matinchek on a monthly basis for health insurance coverage under the Policy. Mr. Matinchek promptly paid each monthly bill, which payments were accepted by John Alden. Payments were made for each month up to and including the May premium bill, which was issued by John Alden on May 15, 1992; received by Mrs. Matinchek on or about May 19, 1992; and paid on or about May 21, 1992.

9. Mr. Matinchek submitted claims for medical treatment received by him between January 17, 1992 and March 3, 1992. John Alden did not pay these claims, but rather "investigated" Mr. Matinchek's claim by requesting records from certain health care providers, including Francis X. Perna, M.D. ("Dr. Perna").

10. It is believed and therefore averred that Dr. Perna's records were received by John Alden on or about April 7, 1992, and that John Alden contends the records establish that, as of the date of the Application, Mr. Matinchek was suffering from diabetes mellitus.

11. However, John Alden did not cancel or rescind the Policy at that time. Rather, it billed and accepted premium payment from Mr. Matinchek for April 1992, and billed for premium of May 15, 1992.

12. Furthermore, by letter dated May 14, 1992, John Alden requested Mr. Matinchek to provide additional information concerning the accuracy of the information contained in the Application. However, before Mr. Matinchek could respond to this inquiry, he left for a trip to Canada on or about May 19, 1992.

13. On May 20, 1992, while traveling in Canada, Mr. Matinchek was involved in an automobile accident in which he was severely injured and as a result of which he has incurred substantial medical expenses which have or will exceed $160,000.

(Complaint at ¶¶ 8–13.) Though the words "waiver" and "estoppel" are not used, the court believes that the above paragraphs of the complaint quite straightforwardly plead waiver and estoppel claims. If counsel for John Alden actually failed to consider these issues during the course of discovery, it is surely not the fault of Mr. Matinchek or his counsel.

### C. *Waiver*

█ When an insurance company acquires knowledge of facts constituting a ground for rescission, or learns of facts which would put a reasonably prudent insurer on notice to inquire further, it must promptly rescind the policy or it may waive its right to do so. *Verex Assurance, Inc. v. John Hanson Sav-*

*ings and Loan,* 816 F.2d 1296, 1302–1303 (9th Cir.1987) (citing cases); *Foremost Guaranty Corporation v. Meritor Savings Bank,* 910 F.2d 118, 129 (4th Cir.1990) (citing *Bowles v. Mutual Ben. Health and Acc. Ass'n,* 99 F.2d 44 (4th Cir.1938)); *see also First Pennsylvania Banking and Trust Company v. United States Life Insurance Company,* 421 F.2d 959, 963 (3rd Cir.1969) ("A review of the cases discloses that in order to constitute waiver, there must be sufficient knowledge disclosed to the insurer that there is some falsity in the statement by the insured or something of significance which would put a reasonably prudent person on notice to make further inquiry."). One policy rationale underlying this principle is that unreasonable delay in acting upon known facts constituting a ground for recession may have devastating consequences for the insured since recession runs back to the effective date of a policy. Allowing an insurer to rescind after unreasonable delay would be to effectively permit it to unnecessarily prolong the period during which an apparently insured person is unknowingly uninsured. In view of the astronomical cost of medical care the perils of being uninsured need not be belabored. Suffice it to say that they are sufficient to justify requiring that an insurer rescind, if it wishes to do so, reasonably promptly after discovering a basis for rescission.

Courts have also held that if an insurer accepts premium payments after gaining knowledge of a ground for rescission the right of rescission is waived. *Home Insurance Company v. Matthews,* 998 F.2d 305, 309–10 (5th Cir.1993); *Foremost,* 910 F.2d at 129. The policy underlying this rule has been succinctly stated by the Supreme Court: "To hold otherwise would be to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens." *Phoenix Mutual Life Insurance Company v. Raddin,* 120 U.S. 183, 197, 7 S.Ct. 500, 506–07, 30 L.Ed. 644 (1887) (*quoted in Foremost,* 910 F.2d 118).

█ The court believes that the undisputed facts make plain that John Alden failed to act reasonably promptly to rescind Matinchek's policy after learning of his misrepre-

sentations on the enrollment form. On March 10, 1992, John Alden received the claim form containing the diagnosis code for diabetes mellitus. A full month passed before John Alden obtained the medical records referenced in claim form, and John Alden has attempted no explanation for the delay. As of April 10, 1992, John Alden was in possession of medical records which unambiguously demonstrate that Matinchek provided false information on his enrollment form. It is on the basis of these records that John Alden ultimately reached its decision to rescind. After John Alden obtained these records it spent an additional five weeks completing the review of Matinchek's case. Having apparently reached a decision to rescind on May 13, 1992, it took John Alden an additional eight days to draft a letter to Matinchek informing him of its decision, and the letter surely did not reach his residence for several more days. At the time of Matinchek's May 20 accident, a week after the rescission decision was made; John Alden had taken no steps to notify him. All told, over ten weeks elapsed between the initiation of John Alden's investigation and notice to Matinchek of its intent to rescind. Approximately six of the ten weeks passed after John Alden acquired knowledge of the facts upon which it based its rescission decision. The court believes that John Alden's delay in reaching a decision regarding Matinchek's policy, as well as its delay in communicating its decision once reached, was unexcusably unreasonable. It is further undisputed that John Alden accepted payment for the policy from Matinchek well after gaining full knowledge of the misrepresentations on his enrollment application. In light of the forgoing, the undisputed facts require a finding that John Alden waived its right to rescind Matinchek's policy on the ground that he made material misrepresentations to obtain it. Accordingly, the court will grant summary judgment as to liability in favor of Plaintiff Matinchek and against John Alden.[1]

---

1. Because John Alden waived its right to rescind on the basis of material misrepresentation, the court need not reach the estoppel issue.