705 So.2d 301 (1998)
John Edward ANDERSON, Plaintiff-Respondent,
v.
Cynthia C. OLIVER, Liberty Mutual Insurance Company and Assicurazioni Generali S.P.A., Defendant-Relator.
Nos. W97-721, 97-1102.
Court of Appeal of Louisiana, Third Circuit.
January 7, 1998.
Rehearing Denied February 25, 1998.
John Allen Jeansonne, Jr., Lafayette, for John Edward Anderson.
Marvin Huber Olinde, Baton Rouge, for Cynthia C. Oliver, et al.
Thomas Reginald Hightower, Jr., Lafayette, for Assicurazioni Generali, S.P.A.
Steven M. Lozes, New Orleans, for Vesta Insurance Co. in No. W97-721.
Thomas Reginald Hightower, Jr., Lafayette, Steven M. Lozes, New Orleans, for Vesta Insurance Co. in No. 97-1102
Before DECUIR, PETERS and GREMILLION, JJ.
PETERS, Judge.
The plaintiff, John Anderson, brought this suit to recover damages for physical injuries he sustained on October 6, 1994, in Acadia Parish, Louisiana, when he was struck by an automobile being driven by Cynthia Oliver. In his suit, Mr. Anderson named Ms. Oliver, Liberty Mutual Insurance Company (Liberty Mutual), Assicurazioni Generali S.P.A. (Generali), and Vesta Fire Insurance Company (Vesta) as defendants. Liberty Mutual is Ms. Oliver's liability insurance carrier, and the other two companies provide uninsured/underinsured (UM) insurance coverage for the vehicle Mr. Anderson was driving at the time of the accident. In the proceedings before this court, Generali seeks reversal of a partial summary judgment rendered by the *302 trial court to the effect that Louisiana law governs interpretation of its insurance policy.
There is no dispute as to the facts which relate to this motion as presented to the trial court. Mr. Anderson sustained his injuries in an accident which occurred on Interstate Highway 10 (I-10) in Acadia Parish on October 6, 1994. On that day, Anderson, who was then a Texas resident,[1] was driving a 1987 Peterbilt tractor-trailer rig owned by Eddie Waldrup of Houston, Texas, and leased by Mr. Waldrup to Morgan Southern, Inc. (Morgan Southern), a Georgia common carrier. Mr. Anderson was traveling west on I-10 when he pulled his rig onto the shoulder of the highway to check his load. As he exited his vehicle, Ms. Oliver's vehicle, which was also traveling west on I-10, struck him.
Generali had issued a policy of insurance covering the tractor-trailer rig, which provided for liability limits of $1,000,000.00 and UM limits of $40,000.00. Morgan Southern had purchased the Generali policy through an insurance agency with offices in North Carolina and Georgia. The policy complied with all requirements of Georgia law, including Georgia's requirements concerning selection of UM benefits. Additionally, the negotiation, selection of benefits, issuance, and delivery of the policy occurred entirely outside the State of Louisiana. Neither Morgan Southern nor the insurance agency that issued the policy maintained any offices, terminals, or employees in Louisiana. All vehicles owned by Morgan Southern were registered or garaged in states other than Louisiana, and other than the fortuitous event of the accident occurring in Louisiana, Morgan Southern had no Louisiana connection whatsoever.
Sometime after the suit was filed, Liberty Mutual paid its policy limits, and it was dismissed from the suit. Mr. Anderson filed a motion for partial summary judgment, requesting that the trial court apply Louisiana law, and not Georgia law, in determining the UM coverage afforded Mr. Anderson under the Generali insurance policy. Relying on this court's decision in Trautman v. Poor, 96-627 (La.App. 3 Cir. 12/11/96), 685 So.2d 516, the trial court granted the motion. In granting the motion, the trial court further concluded that the Generali policy did not comply with the written waiver requirements of La.R.S. 22:1406(D)(1)(a)(i) and (ii). Because the policy did not comply with those provisions, the trial court rendered judgment increasing the UM limits available to Mr. Anderson to $1,000,000.00. Generali seeks reversal of this judgment.
Generali both filed for supervisory writs to this court and appealed, requesting review of the decision of the trial court on the partial summary judgment. Generali presents two issues for our review. First, Generali asserts that the trial court erred in applying this court's decision in Trautman to conclude that Louisiana law should apply to the interpretation of Generali's liability for UM benefits and in failing to apply the Louisiana conflict-of-laws provisions to the interpretation of the Generali policy. Generali's second assertion is that La.R.S. 22:1406(D)(1)(a)(iii) is unconstitutional because it violates the prohibitions against the impairment of contracts, the Commerce Clause of the United States Constitution, substantive and procedural due process, and the Full Faith and Credit Clause of the United States and Louisiana Constitutions.
La.R.S. 22:1406(D)(a)(i) provides in part that "[n]o automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state" unless the policy makes available to the named insured under the policy UM coverage in an amount equal to the liability limits. Further, "[s]uch coverage need not be provided ... where the named insured has rejected the coverage or selected lower limits...." The rejection of UM coverage or selection of lower UM limits must be made in writing on a form provided by the insurer. La.R.S. 22:1406(D)(1)(a)(ii). By Acts 1987, No. 444, § 1, the Louisiana Legislature attempted to expand the Louisiana UM requirements to policies other than those in-state situations *303 contemplated in La.R.S. 22:1406(D)(1)(a)(i). That Act added the following language to the Louisiana Insurance Code: "This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." La.R.S. 22:1406(D)(1)(a)(iii) (emphasis added). The Generali policy contains no written rejection/selection form as required by these provisions of Louisiana law.
Acts 1987, No. 444, § 1, was added in response to the supreme court's decision in Snider v. Murray, 461 So.2d 1051 (La.1985). In Snider, the supreme court concluded that La.R.S. 22:1406(D)(1) did not purport to affect policies written and delivered in other states covering vehicles garaged or registered elsewhere, even if such vehicles were involved in Louisiana accidents with Louisiana residents. In reaching that conclusion, the supreme court commented that "[p]erhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the accident occurs in Louisiana, but the Legislature did not include such a provision in La.R.S. 22:1406(D)(1)." Id. at 1053-54. Acts 1987, No. 444, § 1, was the legislature's attempt to enact such a law.
Since the addition of La.R.S. 22:1406(D)(1)(a)(iii), this court has issued three opinions concerning its effect on an out-of-state UM policy, including the decision in Trautman. We first addressed the issue in Willett v. National Fire & Marine Insurance Co., 594 So.2d 966 (La.App. 3 Cir.), writ denied, 598 So.2d 355 (La.1992). In Willett, two New Hampshire residents were injured in an accident which occurred after the effective date of Acts 1987, No. 444, § 1. Their automobile, a borrowed Louisiana vehicle, was rear-ended in Lake Charles, Louisiana, by a vehicle driven and owned by Louisiana residents. The New Hampshire residents sought to recover UM benefits under an Allstate insurance policy insuring a vehicle which belonged to one of the plaintiffs and which was principally garaged and registered in New Hampshire. The policy had been written, issued, and delivered in New Hampshire, and contained a clause, authorized by New Hampshire law, which provided Allstate a credit for its UM coverage if the liability coverage was equal to or exceeded the UM limits. The liability coverage of the Louisiana residents exceeded the Allstate UM limits, and, based on this clause, Allstate sought a release from any responsibility in the accident. The trial court granted a summary judgment to the effect that New Hampshire law governed this policy and dismissed the plaintiffs' claims against Allstate.
This court concluded that Acts 1987, No. 444, § 1, had the effect of overruling the supreme court's decision in Snider. However, we did not automatically apply Louisiana law simply because Louisiana residents were involved in the accident and the accident occurred in the state. We first performed a choice-of-law analysis based on the jurisprudence available at that time.[2] After analyzing the existing jurisprudence, this court reached the following conclusions:
We find in this case that Louisiana's interests outweigh those of New Hampshire. The accident happened in Louisiana and involved the owner of the eighteen wheeler and its driver, both of whom were residents of Louisiana. As defendants, their interests could be adversely affected by a New Hampshire construction of the underinsured motorist provision by limiting the fund from which the plaintiffs' claims are to be satisfied. Moreover, other economic interests are involved. For example, the cost of medical care provided in Louisiana for the injured parties is generally more likely to be paid if there is sufficient insurance.
These interests are consistent with Louisiana's long-time policy of requiring uninsured and underinsured motorist protection. *304 By Act 444 of 1987, the legislature reaffirmed Louisiana's public policy for the financial protection of victims of injuries in Louisiana accidents caused by the uninsured and underinsured motorist. Louisiana law does not make Louisiana residence a prerequisite to the application of its uninsured motorist laws for the benefit of a party injured in this state. It requires only that Louisiana residents be involved. We conclude that, as between Louisiana and New Hampshire in this case, the interests and the policies of Louisiana would be most seriously impaired if its law is not applied to the issue of whether Allstate's underinsured motorist coverage is available. Louisiana is the choice of law.

Id. at 970 (emphasis added).
In Holcomb v. Universal Insurance Co., 93-1424 (La.App. 3 Cir. 6/1/94), 640 So.2d 718, writ denied, 94-1740 (La.10/7/94), 644 So.2d 643, this court had its second opportunity to address the application of La.R.S. 22:1406(D)(1)(a)(iii) to an out-of-state UM policy. In Holcomb, three Arkansas residents were injured when their vehicle was struck in Rapides Parish, Louisiana, by a Louisiana licensed and registered vehicle which was owned by a Louisiana resident and being driven by another Louisiana resident. The vehicle occupied by the Arkansas residents was licensed, registered, and garaged in Arkansas. The Arkansas residents settled their claims against the Louisiana residents and their liability insurer and reserved their rights to recover UM benefits from Universal Insurance Company (Universal), the insurer of the Arkansas vehicle. The Universal policy had been issued and delivered in Arkansas. However, unlike Louisiana, Arkansas's insurance law separated UM coverage into two different components: uninsured motorist coverage and underinsured motorist coverage. The Universal policy contained only uninsured motorist coverage as the underinsured motorist coverage had been rejected. The trial court, based solely on La.R.S. 22:1406(D)(1)(a)(iii), concluded that Louisiana law, and not Arkansas law, governed the interpretation of the substance of the policy, thereby making available underinsured motorist benefits to the plaintiffs.
This court reversed the trial court and found that Arkansas law applied to the interpretation of the policy. Our decision was based on a conflict-of-laws analysis pursuant to the then new conflict-of-laws provisions, La.Civ.Code art. 3515, et seq., which became effective January 1, 1992, and which we concluded were applicable to this accident. This court concluded that La.R.S. 22:1406(D)(1)(a)(iii) was not applicable because "although the accident occurred [in Louisiana] and involved a Louisiana resident, the latter is totally unaffected by our decision." Id. at 722. We further concluded: "Were the circumstances otherwise, i.e., if a Louisiana resident were directly affected, this fact would not necessarily dictate the application of Louisiana law but would be pertinent to a determination of the choice of law to be applied." Id. (emphasis added). This decision was followed by our most recent pronouncement on the issue in Trautman, 685 So.2d 516.
In Trautman, a Tennessee resident driving her own vehicle which was licensed, garaged, and registered in Tennessee, was involved in a St. Martin Parish, Louisiana accident with a vehicle owned by a Louisiana resident and operated by another Louisiana resident. The Tennessee resident's vehicle was insured through a policy issued by Victoria Fire and Casualty Company (Victoria). The policy, which was issued in Tennessee, provided for UM coverage but also contained a clause excluding UM coverage "if the insured failed to obtain prior consent from it before settling with the primary parties." Id. at 517. She settled her suit against the Louisiana tortfeasor without obtaining Victoria's prior consent, and Victoria denied coverage based upon her failure to obtain that consent. The trial court granted the plaintiff's motion for partial summary judgment, concluding that Louisiana law, and not Tennessee law, applied to the interpretation of the policy and that the consent-to-settle clause was unenforceable in this accident. This court affirmed the trial court but, unlike Willett and Holcomb, concluded that La.R.S. 22:1406(D)(1)(a)(iii) was applicable without first considering conflict-of-laws principals. We did so because of *305 the language of La.Civ.Code art. 14, the introductory Article concerning conflict of laws, which states: "Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code." (Emphasis added). This court concluded that La.R.S. 22:1406(D)(1)(a)(iii) expressly provided that it was to be applicable regardless of the conflict-of-laws provisions of the Louisiana Civil Code. In the court's opinion, if the accident occurred in the state and involved a resident of the state, Louisiana law applied to the interpretation of UM benefits.
While we do not disagree with the result in Trautman, we do disagree with the method of analysis. The very first sentence in the Willett opinion correctly states that the issues presented make these cases conflict-of-laws cases. Willett, 594 So.2d 966. Thus, the first thing to be determined is which state's law is applicable. That is what was done in Willett and Holcomb and is the method of analysis which should have been applied herein. See also Shell Oil Co. v. Hollywood Marine, Inc., 97-106, 97-611 (La.App. 5 Cir. 10/15/97), 701 So.2d 1038; Sentilles Optical Servs., Div. of Senasco, Inc. v. Phillips, 26,594 (La.App. 2 Cir. 3/1/95), 651 So.2d 395.
The general rule concerning determination of which state's law is applicable to a conflicts situation is found in La.Civ.Code art. 3515, which reads:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
More specifically, in relation to conventional obligations, La.Civ.Code art. 3537 provides:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
The motion for partial summary judgment before us was filed and disposed of by the trial court before the effective date of the 1997 legislative changes to La.Code Civ.P. art. 966,[3] and the decision of the trial court should be considered in light of the provisions of that Article in effect at the time of that decision. While La.Code Civ.P. art. 966[4] had also been amended in 1996, this court had previously concluded that only the persuasive nature of the motion was changed by that amendment and that it did not change the requirement that a summary judgment should only be rendered absent genuine issues as to material fact, and where the mover is entitled to the judgment as a matter of law. Stephenson v. Van Vleit, 96-1407 (La.App. 3 Cir. 4/30/97), 693 So.2d 858, writ denied, 97-1431 (La.9/19/97), 701 So.2d *306 174. While we find that there are no genuine issues as to material fact, we also conclude that the trial court erred as a matter of law in applying the Trautman analysis. In applying the Holcomb analysis to the facts before us, we conclude that as a matter of law, Georgia law applies to the interpretation of the Generali policy.
As previously stated, the UM provisions of the Generali policy complied with Georgia law, and the negotiation, selection of benefits, issuance, and delivery of the policy occurred entirely outside the State of Louisiana. Additionally, neither the insured nor the insurance agency which issued the policy maintained any offices, terminals, or employees in Louisiana, and, other than the location of the accident, Louisiana had no connection whatsoever to the contractual relationship existing between Generali and Morgan Southern. Although Ms. Oliver remains a party defendant, that fact is not enough to warrant application of Louisiana law. "The object of the UM legislation is to promote full recovery for innocent automobile accident victims by making uninsured motorist coverage available for their benefit." Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). This object does not extend to protecting a tortfeasor from liability, even if the tortfeasor is a Louisiana resident.
The application of Louisiana law in this particular case would impinge on Georgia's right to regulate its insurance industry. Georgia has a compelling interest in regulating insurance policies issued to its residents and in seeing that the expectations of the parties to the policies issued are upheld. The policies and needs of interstate insurance systems involving policies issued under terms satisfactory under one state's laws must be considered as a principal factor in evaluating conflict-of-laws situations. Generali contemplated that its total liability for UM benefits under its contract with Morgan Southern was $40,000.00, and Morgan Southern paid a premium for that amount of coverage. There is no compelling Louisiana interest that would override application of Georgia law to its contracts in this case.
We reverse the trial court's granting of the motion for partial summary judgment in this case and remand this matter for further proceedings. In doing so, we adhere to the approach used in Willett and Holcomb of engaging in a conflict-of-laws analysis before applying UM law, and we reject the approach used in Trautman. Because we find that Georgia law is applicable to the Generali policy, we need not reach the remaining issues raised by Generali.

DISPOSITION
For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded for further proceedings. All costs of these proceedings are taxed against the plaintiff, John Anderson.
REVERSED AND REMANDED.
NOTES
[1] At the time of trial, Anderson was a resident of California.
[2] Acts 1991, No. 923, § 1, which revised, amended, and reenacted Chapter 3 of the Preliminary Title of the Civil Code (Conflict of Laws), became effective January 1, 1992. The conflict-of-laws section of the Louisiana Civil Code had previously consisted of Articles 14 and 15 and was expanded by this Act to include Articles 14 through 49. The new conflict-of-laws legislation was redesignated as Articles 3515 through 3549 under the authority of the Louisiana Civil Code. The accident involved in Willett occurred in 1988.
[3] La.Code Civ.P. art. 966 was amended by Acts 1997, No. 483, effective July 1, 1997, and the hearing on motion before this court occurred on April 21, 1997.
[4] Acts 1966, First Ex.Sess., No. 9, effective May 1, 1996.