# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

## No. 98-30780
_____

VIRGINIA WOODFIELD, et al.,

Plaintiffs,

NATIONWIDE MUTUAL INSURANCE CO.,

Plaintiff-Third Party Defendant-Appellant,

versus

CHARLIE BOWMAN, et al.,

Defendants,

PLANET INSURANCE CO.,

Defendant-Third Party Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____
## October 19, 1999

Before JONES and WIENER, Circuit Judges, and LITTLE, Chief District Judge[*]

WIENER, Circuit Judge:

In this diversity case, arising from a multi-vehicle highway accident, Third-party Defendant-Appellant Nationwide Mutual Insurance Co. ("Nationwide") appeals the judgment of the district court holding it liable to Third-party Plaintiff-Appellee Planet

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

1

Insurance Co. ("Planet"), which had settled with parties who were covered by the uninsured motorist ("UM") provisions of policies issued by Nationwide. In this appeal, Nationwide challenges the jury's determination of liability and the quantum of the trial court's judgment, which exceeds the sum paid in settlement by Planet. We affirm.

## I.

### Facts and Proceedings

The pile-up that led to this lawsuit occurred on Interstate 10 in St. Tammany Parish, Louisiana. Because of road construction, Plaintiff Virginia Woodfield, driving in a van with her minor daughter, Plaintiff Kimberly Woodfield (the "Woodfields"), merged to the left lane and came to a complete stop. Several vehicles back, Defendant Wilson Scott ("Scott"), an employee of Defendant Lane Trucking ("Lane"), was driving a tractor trailer in the left lane of the same highway, and was slowing down as he approached the construction area when he was passed on his right by Defendant Charlie Bowman ("Bowman"). Immediately after passing Scott, Bowman zipped into the left lane, directly ahead of Scott, and was rear-ended. This caused Bowman to rear-end the vehicle ahead of him, driven by Celine Nederveld (not a party to the lawsuit), and she in turn rear-ended the Woodfields' van.

The Woodfields initially sued (1) Bowman, (2) Bowman's insurer, Allstate Insurance Co. ("Allstate"), (3) Scott, (4) Lane,

**2**

and (5) Lane's Insurer, Planet. The Woodfields amended their complaint to add their uninsured motorist carrier, Nationwide, as another defendant. The Woodfields subsequently settled with Bowman and Allstate for $10,000 (the Allstate policy limit) and dismissed them from the suit. The Woodfields also settled with Scott, Lane, and Planet for $400,000. An integral part of that settlement agreement is an assignment to Planet of the Woodfields' right, title, and interest in any and all claims against Nationwide in the subject litigation for the injuries sustained by Virginia Woodfield. In implementation of that assignment, Planet filed a third-party complaint against Nationwide.

By consent of the parties, the case was tried to a jury before a magistrate judge. In the liability stage of the Planet-Nationwide portion of the litigation, the jury found Bowman 100% at fault for the accident and exonerated Scott from any liability. In the damages stage, the jury found that the Woodfields had suffered damages totalling $589,973.86. As Bowman, the sole tortfeasor, was insured only for $10,000, Nationwide was held liable under the UM provision of the policies that it had issued to the Woodfields, and a judgment was entered in favor of Planet, the Woodfields' putative assignee, but was limited to the $400,000 that Planet had paid the Woodfields in settlement.

At the request of both parties, the magistrate judge vacated that judgment and allowed additional arguments regarding offset,

**3**

subrogation, contribution, and insurance coverage relative to the quantum of the judgment. The court again concluded that Planet could not recover more than the $400,000 settlement amount and allowed Nationwide a $48,870.44 offset,[1] producing a net judgment for Planet of $351,129.56 plus interest and costs.

Both parties again filed post-trial motions: Planet sought to recover the full $589,973.86 amount assessed by the jury, less any offset; Nationwide requested a new trial and other relief. No longer limiting Planet's recovery to the amount that it had paid the Woodfields, the court reinstated the judgment in the amount awarded by the jury but reduced it to $422,365.86 and deducted the offset of $48,870.44, to produce a final judgment of $373,495.24[2] which Nationwide now appeals.

## II.

## Analysis

### A. Standards of Review

Questions of law such as the interpretation of a statute or a contract, legal conclusions of the district court, and choice of

---

[1] The following amounts were offset: $10,000.00 for Allstate's settlement payment to the Woodfields, $28,433.06 for Nationwide's payments for medical bills, $1,437.38 for Nationwide's payments for property damage, and $9,000.00 for Nationwide's settlement payment to Kimberly and John Woodfield.

[2] The magistrate judge granted Nationwide's motion to alter or amend the judgment only in respect to the date used in calculating legal interest.

4

law are subject to <u>de novo</u> review.[3]  Findings of fact are reviewed for clear error.[4]  The decision to grant or deny a motion for a new trial will be disturbed only for abuse of discretion or misapprehension of the law.[5]

B.  Issues

Nationwide first argues that the court erred in concluding that the Woodfields validly assigned Planet their rights against Nationwide.  Second, Nationwide asserts that the Woodfields waived their right to recover under the UM provisions of the policies by failing to obtain Nationwide's consent to settle.  Nationwide then argues that, in the event we should determine that the assignment was valid and that coverage was not waived, we should apply Louisiana law, which prohibits "stacking" of UM policy limits, and cap Nationwide's liability at $100,000, the limit of one policy. Alternatively, Nationwide would have us subtract $22,365.86 from Planet's judgment, that being the amount by which the final judgment against Nationwide (before offset) exceeds the $400,000 that Planet paid in settlement.  Finally, Nationwide argues that the jury clearly erred in finding Bowman 100% liable and seeks reversal of the verdict or a new trial on liability.

---

[3] <u>E.g.</u>, <u>Pearlman v. Pioneer Ltd. Partnership</u>, 918 F.2d 1244 (5th Cir. 1990).

[4] <u>See, e.g.</u>, <u>Bolding v. C.I.R.</u>, 117 F.3d 270, 273 (5th Cir. 1997).

[5] <u>Mitchell v. Lone Star Ammunition, Inc.</u>, 913 F.2d 242, 252 (5th Cir. 1990).

Planet counters by insisting, first, that under controlling law, the Woodfields' assignment was valid and, second, that Nationwide waived its right to insist on its consent as a condition to settlement, both by failing to raise the defense in a timely manner and by denying UM coverage. With respect to the amount of the judgment, Planet argues that Mississippi law, which permits stacking, should govern interpretation and application of the terms of the policy. Planet also argues that the jury verdict, and not the settlement amount, was the proper measure of damages because, under Louisiana law, the purchaser of litigious rights, who is a conventional — as opposed to an equitable — subrogee, is entitled to all rights of the original obligee.[6] Finally, Planet asks us to affirm the jury verdict and the lower court's denial of Nationwide's motion for a new trial.

## C. Assignment of Rights in the Lawsuit

First, we conclude that the Woodfields' assignment of rights to Planet is a valid sale of litigious rights, i.e., the plaintiff's rights in a filed lawsuit, and that the assignment incorporates a conventional subrogation. The issue of

---

[6] See La. Civ. Code art. 1827, cmt. (d) (expressly overruling cases which limited the subrogee's recovery to the amount he actually paid the obligee); id. art. 2652 (establishing that litigious rights may be assigned and that assignee steps into shoes of assignor as to all rights, including right to recover more than amount paid for the litigious rights unless the obligor timely offers to acquire these rights from the assignee for the price paid and ceases to contest or defend against the claim).

assignability of these rights is governed by Louisiana law[7] which provides that litigious rights are rights in an <u>already-filed</u> personal injury suit and are "real" rights, not "strictly personal" rights,[8] heritable and freely assignable.[9]  In the instant case, the Woodfields assigned Planet their rights to recover in a lawsuit already pending against Nationwide; they did not purport to assign their UM coverage as such.  Thus, the assignment was valid under the scheme of Louisiana's Civil Code, and Planet stepped into the shoes of the Woodfields for the purposes of this lawsuit.[10]  In addition, the Woodfields accomplished the assignment to Planet through express language in a written settlement agreement as part

---

[7] In diversity cases, federal courts apply the law of the forum state, here, Louisiana.  <u>See</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938); <u>Klaxton Co. v. Stentor Elec. Manuf. Co.</u>, 313 U.S. 487 (1941).

[8] La. Civ. Code art. 2642 & cmts. (providing that all rights are assignable except those which are strictly personal).

[9] <u>See</u> La. Civ. Code art. 2652 ("Sale of litigious rights"). Article 2652 specifically provides:  "When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment...."  The article affirms the Louisiana litigious rights doctrine under which such rights are freely heritable and assignable.  <u>See also</u> <u>Nathan v. Touro Infirmary</u>, 512 So.2d 352, 354-55 (La. 1987) (holding that Louisiana legislatively overruled common law rule that tort action abates on death of victim); <u>Guirdy v. Theriot</u>, 377 So.2d 319, 323-24 (La. 1979) (noting "significant difference between inheriting an instituted action and inheriting the right to institute an action").

[10] Rather than formally moving to be substituted as the Party-Plaintiff, Planet filed a third-party complaint again Nationwide.

**7**

of the consideration for the $400,000 paid by Planet; therefore, the type of subrogation that resulted is conventional (or contractual) rather than legal (or equitable).[11]

Nationwide asks us to follow the Louisiana Court of Appeal's holding in Constans v. Choctaw Transport, Inc.[12] to the effect that conventional subrogation of a personal injury claim is not permitted.[13] We decline this invitation. We have recently confirmed our recognition of the Louisiana Supreme Court's distinction between a personal injury claim that is the subject of an extant lawsuit, which is heritable and assignable, and a claim that is merely an inchoate personal injury cause of action that has not yet been sued on, which is strictly personal and not heritable or assignable.[14] As Constans conflicts with our precedent, we

---

[11] See La. Civ. Code art. 1827 (providing that conventional subrogation is subject to the rules governing assignment of rights). "'Conventional' subrogation occurs when an obligee receives performance from a third person and in express terms subrogates that person to the rights of the obligee, even without the obligor's consent. 'Legal' subrogation takes place by operation of law in favor of an obligor who pays a debt he owes with others and who has recourse against those others as a result of the payment. Wilhite v. Schendle, 92 F.3d 372, 376 (5th Cir. 1996) (citations omitted) (construing Louisiana law).

[12] 712 So.2d 885 (La. App. 1997), writ denied, 716 So.2d 892 (La. 1998) (allowing contribution under legal subrogation theory).

[13] Id. at 895.

[14] In re Pembo, 32 F.3d 566 (unpublished table decision), No. 94-30036, slip op. at 4 (5th Cir. July 28, 1994) (according to 5th Cir. Rule 47.5.3, "[u]npublished opinions issued before January 1, 1996, are precedent"); see also Parich v. State Farm Mutual Auto. Ins. Co., 919 F.2d 906, 917 & n.3 (5th Cir. 1990) (applying Louisiana law on assignment of rights but finding assignment

**8**

decline to follow it.[15]  And, as Louisiana law is clear that the express assignment of a cause of action for which suit has been instituted is valid, we do not need to reach Planet's alternative recovery theories of legal subrogation and unjust enrichment.

Nationwide next argues that under the terms of the UM policies themselves the assignment was invalid because the Woodfields failed to obtain the insurer's consent to settle.  We hold, however, that Nationwide waived its right to assert this affirmative defense under the consent-to-settle clause of the insurance policy by

_____

invalid as suit had not been filed).

[15]  As often noted, we are a strict stare decisis court:  One panel of this court cannot disregard, much less overrule, the decision of a prior panel, even on decisions involving interpretation of state law.  Only supervening contrary decisions of the state's highest court or the supervening enactment of a controlling statute will render our decisions clearly wrong and thus no longer precedential.  FDIC v. Abraham, 137 F.3d 264, 267-68 (5th Cir. 1998).  Therefore, we will not ignore our own prior decisions to apply the rule of Constans which, after all, was decided by one of five intermediate Louisiana appellate courts only, particularly in the face of two state supreme court decisions contra.  We emphasize the narrowness of our holding in this case:  We do not establish a general rule that conventional subrogation results from every sale of litigious rights.  In this case, the deliberate wording of the Woodfield-Planet settlement agreement, specifying that the objects of the assignment are the assignors' right, title, and interest in the lawsuit makes clear that the subrogation is conventional; in the absence of a specific settlement contract or assignment instrument, however, the sale of a litigious right would still result in subrogation — albeit possibly legal rather than conventional — of the purchaser to the rights of the seller,.  Any conclusion we might reach on that question would be dicta.  In the context of the Louisiana concept of litigious rights, what is crucial is not the label applied to the type of subrogation but the fact that the assignment is of an interest in an existing lawsuit, as distinguished from an inchoate right to sue.

9

failing to plead it adequately.

As a preliminary matter, we note that under the choice of law provisions of Louisiana, the forum state,[16] issues concerning the terms of an insurance policy are governed by Mississippi law. The Louisiana Civil Code's generally applicable choice of law article specifies that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to the case."[17] Specifically regarding contracts, the Code instructs courts to assess the strength of the relevant policies of the involved states in light of the place of negotiation, formation, and performance of the contract as well as the location of the object of the contract.[18] Applying these principles, Louisiana courts generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy.[19] In the instant case, these principles lead us to conclude that Mississippi law governs the policy terms.

The Woodfields' Nationwide policies were issued in

---

[16] Federal courts apply the choice of law provisions of the forum state, here, Louisiana. Duhon v. Union Pac. Resources Co., 43 F.3d 1011, 1013 (5th Cir. 1995).

[17] La. Civ. Code art. 3515.

[18] Id. art. 3537.

[19] Anderson v. Oliver, 705 So.2d 301, 305-06 (La. App. 1998) (relying on Louisiana Civil Code choice of law articles); Holcomb v. Universal Ins. Co., 640 So.2d 718, 722 (La. App. 1998).

**10**

Mississippi, to Mississippi residents, covering vehicles principally garaged in Mississippi. In contrast, the only contact between the Nationwide policies and Louisiana is the situs of the accident on a highway in Louisiana. Mississippi has a more substantial interest in uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who happens to sustain injury while transitorily within the state's borders. Nationwide nevertheless contends that the Louisiana Insurance Code establishes a presumption that courts should apply Louisiana law to matters concerning UM policies.[20] In Anderson v. Oliver,[21] however, the only Louisiana appellate court to consider the precise question specifically disapproved of the suggestion that the UM statute includes a choice of law presumption, even though that court would have reached the same result, applying Louisiana law under the traditional "interest analysis" codified in the above-referenced conflict of laws statutes.[22] Therefore, under the choice of law provisions of the forum state of Louisiana, we apply Mississippi law to interpret the terms of the UM policies at issue.

We begin our substantive analysis by observing that the parties do not dispute that (1) consent-to-settle provisions are

---

[20] See Trautman v. Poor, 685 So.2d 516, 521 (La. App. 1996).

[21] 705 So.2d 301 (La. App. 1998).

[22] Id. at 305.

enforceable under Mississippi law,[23] (2) the Nationwide policies at issue contain such clauses, requiring the insured to obtain written consent of the insurer to settle any action brought against a potentially liable party, or (3) the Woodfields failed to obtain Nationwide's consent to settle with Planet, Allstate, and their respective insureds.  Planet nevertheless contends, first, that Nationwide waived the right to assert its consent-to-settle defense by failing to plead it; and, second, that Nationwide is estopped from asserting this defense by its denial of coverage.  As we agree that Nationwide failed to plead this defense and thus waived it, we do not reach the res nova Mississippi law question whether an insurer that denies coverage is estopped to assert its rights under the policy clause requiring the insured to obtain the insurer's consent to settle.  We thus avoid "the always-dangerous undertaking of predicting what [Mississippi] courts would hold if the issue were presented squarely to them."[24]

Nationwide asserts that it did plead the consent-to-settle affirmative defense.  It points to its "Fourth Defense" to Planet's third-party complaint:  "The claims, demands and causes of action asserted by Wilson Scott, Lane Trucking Company, Inc. and Planet Insurance Company are barred, or alternatively, reduced, by the

---

[23] See, e.g., St. Paul Property & Liab. Ins. Co. v. Nance, 577 So.2d 1238, 1242 (Miss. 1991); United States Fidelity & Guar. Co. v. Hillman, 367 So.2d 914, 921 (Miss. 1979).

[24] Stephens v. State Farm Mutual Auto. Ins. Co., 508 F.2d 1363, 1366 (5th Cir. 1975).

doctrines of accord and satisfaction, transaction and compromise, waiver and/or release." The district court, in its May 6, 1998 Order and Reasons in response to the parties' cross-motions to vacate the judgment, held that such "boilerplate" defensive pleading is insufficient under Federal Rule of Civil Procedure 8(c) to apprise Planet of Nationwide's affirmative defense under the specific consent-to-settle provision of the insurance policy, and thus Nationwide waived the defense. We agree.

An insured's failure to obtain the insurer's consent to settle is an affirmative defense under Mississippi law.[25] The Federal Rules require an affirmative defense to be pleaded; failure to plead such a defense constitutes waiver.[26] An affirmative defense is subject to the same pleading requirements as is the complaint.[27] Even though the aim of the relaxed notice pleading standards of Federal Rule of Civil Procedure 8 is to prevent parties from being defaulted for committing technical errors,[28] a defendant nevertheless must plead an affirmative defense with enough

---

[25] See, e.g., Hillman, 367 So.2d at 916 (noting that any action by insured that prejudices subrogation rights of insurer is an affirmative defense which must be pleaded).

[26] Trinity Carton Co. v. Falstaff Brewing Corp., 767 F.2d 184, 194 (5th Cir. 1985).

[27] See Fed. R. Civ. P. 8(e) (requiring all pleadings to be "simple, concise, and direct").

[28] Ingraham v. United States, 808 F.2d 1075, 1079 (5th Cir. 1987) (noting that technical failure to comply with rule 8(c) is not fatal).

**13**

specificity or factual particularity to give the plaintiff "fair notice" of the defense that is being advanced.[29]  We acknowledge that in some cases, merely pleading the name of the affirmative defense —— as Nationwide contends it did —— may be sufficient.[30]  In the instant case, however, Nationwide's baldly "naming" the broad affirmative defenses of "accord and satisfaction" and "waiver and/or release" falls well short of the minimum particulars needed to identify the affirmative defense in question and thus notify Planet of Nationwide's intention to rely on the specific, contractual defense of requiring the Woodfields to obtain the insurer's consent before settling with Planet.

The "fair notice" pleading requirement is met if the defendant "sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise."[31]  In prior cases, we have employed a fact-specific analysis in deciding whether the plaintiff was

---

[29] "Although absolute specificity in pleading is not required, fair notice of the affirmative defense is." Automated Med. Labs. v. Armour Pharm. Co., 629 F.2d 1118, 1122 (5th Cir. 1980) (citing Rule 8(c)); see also Ingraham, 808 F.2d at 1079 ("A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense.").

[30] American Motorists Ins. Co. v. Napoli, 166 F.2d 24, 26 (5th Cir. 1948) (holding, in negligence action arising from car collision, that pleading "contributory negligence" without extensive factual allegations is sufficient); cf. Home Ins. Co. v. Matthews, 998 F.2d 305, 309 (5th Cir. 1993) (noting that improper labeling of defense was not prejudice where defensive pleading set out detailed facts and where state law itself was unclear on distinction between "waiver" and "estoppel").

[31] Matthews, 998 F.2d at 309 (citing Bull's Corner Restaurant v. Director, FEMA, 759 F.2d 500, 502 (5th Cir. 1985)).

unfairly surprised.[32]  For example, in <u>Trinity Carton Corp. v. Falstaff Brewing Corp.</u>,[33] we held that the defendant waived his defenses of failure of consideration and failure to agree on all essential terms by not raising them until several months after the jury's verdict.  Finding no justification for the delay in raising the defenses, we noted that "[the defendant] necessarily was put on notice by the very nature of the suit that these matters of affirmative defense would be relevant to, if not potentially controlling of, the determination of liability."[34]

Likewise, we discern no justification here for Nationwide's having waited until after the trial to inject into the dispute its rights under the explicit contractual provision requiring the insured to obtain consent to settle.  Nationwide, itself an insurance company, was put on notice of the potential need to assert its consent-to-settle defense by the very nature of the

---

[32] <u>See, e.g.</u>, <u>Ingraham</u>, 808 F.2d at 1079 (noting that failure to plead statutory limit on medical malpractice liability prejudiced plaintiffs who would have offered additional proof of damages or pleaded other theories of recovery with more vigor had they know of the defense); <u>Marine Overseas Servs., Inc. v. Crossecean Shipping Co.</u>, 791 F.2d 1227, 1233 (5th Cir. 1986) (noting that although defense of agency relationship was not pleaded, parties were well aware it was an issue); <u>Bull's Corner Restaurant</u>, 759 F.2d at 502 (finding statutory exclusion adequately pleaded where facts recited in complaint related to the exclusion even if it was not mentioned by name); <u>Automated Med. Labs.</u>, 629 F.2d at 1122 (holding that pleading statute of frauds for first time in one sentence of pre-trial memorandum was inadequate).

[33] 767 F.2d 184 (5th Cir. 1985).

[34] <u>Id.</u> at 194.

instant third-party complaint, which arose only because of a settlement agreement between another insurer (Planet) and Nationwide's own insureds (the Woodfields). Nationwide had already been added to the suit as a defendant by the time of the Planet-Woodfield settlement and the filing of Planet's subsequent third-party complaint.

In addition, Nationwide's post-trial, post-hoc suggestion that the consent to settle provision was "exactly" what it meant by pleading the "Fourth Defense" rings hollow, to say the least. Not until after the June 1996 trial, during a second round of post-trial pleadings, did Nationwide advance such a connection. True, Nationwide had mentioned the consent-to-settle clause of the policy during the first round of post-trial motions, in which both parties requested reconsideration of the amount of the judgment in light of offset, subrogation, indemnity, and contribution issues. But even though Nationwide relied on the consent-to-settle clause in that memorandum to the court on those specific issues, at no time did it imply, much less assert, that it had previously pleaded it as an affirmative defense; neither did it mention the "Fourth Defense" at that time. In ruling on those motions, the district court correctly observed that "this issue had not been raised for the first time until the current memoranda were filed with the court. The issue does not appear well framed in the pre-trial order and it would seem that such an issue should be framed as an affirmative

defense in Nationwide's answer, which, in fact, it was not."

After entry of that order, Nationwide again requested post-judgment relief. Faced with the magistrate judge's conclusion that it had not pleaded the affirmative defense, Nationwide proffered the general, non-contractual "Fourth Defense" to support its assertion of having adequately pleaded the specific, contractually based consent-to-settle defense. We cannot credit such a re-characterization to reverse the jury's determination of liability.[35] Accordingly, we affirm the district court's ruling that by failing to plead it, Nationwide waived the right to assert a defense under the consent-to-settle clause of the policies, and that the Woodfields validly settled and assigned their litigious rights against Nationwide to Planet.

D.  Quantum of Damages

We now address Nationwide's concern with the amount of the judgment rendered against it. First, Nationwide contends that we should apply Louisiana law (which does not permit stacking) and cap its liability at $100,000, the limit of UM coverage under one

---

[35] "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." Freeman v. Continental Gin Co., 381 F.2d 459, 469 (5th Cir. 1967) (disallowing untimely amended pleading); see also Union Planters Nat'l Leasing Inc., 687 F.2d 117, 121 (5th Cir. 1982) (denying request to amend answer and noting that "concerns of finality in litigation become more compelling [when] the litigant has had the benefit of a day in court").

policy.[36]  Planet counters that the district court was correct in applying Mississippi law, under which "stacking" of policies is allowed.  Second, Nationwide argues under Constans that, as Planet is a subrogee to the rights of the Woodfields, it cannot recover more than the amount of the settlement, or $400,000.  Planet counters by asking us to uphold the full amount of the judgment even though, as adjusted by the court, it exceeds the settlement amount by $22,365.86.  We affirm the district court's decision on both points.

We have already determined that under Louisiana's choice of law statutes, Mississippi law, not Louisiana's, governs the interpretation and application of policy terms.[37]  In a case decided after the magistrate judge comprehensively addressed the stacking question in the instant lawsuit, the Mississippi Supreme Court explicitly held that courts may stack the UM limits of separate policies, irrespective of the number and amount of premiums paid for the policies.[38]  Nationwide issued two policies with UM coverage to the Woodfields, one policy covering four vehicles and another

---

[36] See La. Rev. Stat. § 22:1406(D)(1)(c)(i) (anti-stacking statute).

[37] La. Civ. Code arts. 3515, 3537.

[38] United States Fidelity & Guar. Co. v. Ferguson, 698 So.2d 77, 79 (Miss. 1997) ("We now affirmatively declare that the public policy of this State mandates stacking of UM coverage for every vehicle covered under a policy...."). Ferguson was decided July 31, 1997.  The magistrate court issued its order regarding stacking on December 20, 1996.

covering a fifth. When stacked, the aggregate UM limit for all five vehicles is $500,000, well above the final judgment ($422,365.86 gross; $351,129.56 net). As we conclude that there is no merit in Nationwide's argument against applying Mississippi law, there is no basis for capping the damages at $100,000, the UM limit of one policy.

In addition, we are satisfied that the district court did not err in entering a judgment for an amount, prior to offset, higher than the $400,000 settlement price that the Woodfields received from Planet in consideration for assigning Planet their rights in the lawsuit against Nationwide. Under the Louisiana law that governs the sale of litigious rights and conventional subrogation, the assignee/subrogee (Planet) may recover the full amount of the debt, even if it is greater than the amount paid to the original obligee (the Woodfields) unless the obligor timely acknowledges the debt and requests to purchase those rights from the assignee for the same price.[39] Nationwide did neither here.

A review of the salient facts confirms that Nationwide is not entitled to limit Planet's judgment to the amount paid for the assignment: The jury returned a verdict of $589,973.86, and the court rendered a judgment in that amount; at the request of both

---

[39] See La. Civ. Code art. 2652 (allowing debtor to extinguish obligation by "redeeming" the lawsuit for the same amount the assignee paid for it); Clement v. Sneed Bros., 116 So.2d 269 (La. 1959) (discussing exceptions to debtor's right to redeem if debtor is untimely in its request or continues to defend the suit).

**19**

parties, the court reconsidered the judgment and capped it at $400,000, the amount of the settlement, then subtracted an offset to Nationwide; the parties again sought modification, with Planet repeating its objection to the amount of the judgment and moving to reinstate the jury award; the court granted Planet's motion but reduced the judgment, first, by deducting the $50,000 awarded to Mr. Woodfield for loss of consortium and, second, by deducting the $117,608 awarded to Mrs. Woodfield for lost wages. The adjusted amount, prior to offset, was $422,365.86. The offset to Nationwide, which is not disputed, was $48,870.44,[40] resulting in a net judgment of $373,495.24. The magistrate judge reasoned that as the amount of the judgment, after remittitur and offset, was below the $400,000 settlement amount, no further adjustment was required. Nationwide argues, however, that the starting point, before offset, should be $400,000 and asks us to reduce the judgment by $22,365.86. Importantly, Nationwide never attempted to redeem the litigious right from Planet and never ceased defending against the UM claim. Under these conditions, the law affords the obligor no "cap." We affirm the magistrate judge's final ruling on the amount of the judgment, albeit for different reasons.

We have already decided that in regards to the Woodfields' assignment of rights to Planet under the settlement agreement, (1) assignment-related issues are governed by the law of the forum

---

[40] See supra note 1 (itemizing offset).

state (Louisiana), and (2) the comprehensive settlement agreement includes a valid assignment of the Woodfields' rights in the existing lawsuit and a conventional subrogation to Planet. Therefore, under Louisiana Civil Code article 1827 ("Conventional subrogation by obligee"), the district court was not prohibited from rendering a judgment in an amount greater than the gross settlement amount. Revision comment (d) to article 1827 specifies that under conventional subrogation, the subrogee "is entitled to recover the full amount of the debt from the obligor."[41] In contrast, Louisiana law limits recovery under legal subrogation and unjust enrichment —— theories of recovery we do not reach in this appeal —— to the amount actually paid.[42]

The correctness of this result is buttressed by the Louisiana doctrine of sale of litigious rights:[43] When, in a pending lawsuit, the original plaintiff transfers his position to another for a specific sum of money, a defendant (such as Nationwide) has a right either (1) to pay the transferee the same amount that the transferee paid the obligee, thus extinguishing all claims and cutting any future losses, or (2) to continue to defend the action and gamble on doing better (or risk doing worse) than the

_____

[41] La. Civ. Code art. 1827, cmt. d.

[42] Id. arts. 1830, 2298. And, as noted above, under article 2652, recovery is likewise limited but only if the obligor timely acknowledges the obligations and offers to purchase the litigious right for the same price as the assignee paid for it.

[43] Id. art. 2652.

transferee's valuation of the suit.  Here, Nationwide  continued to

defend and took the gamble of incurring a judgment in excess of

$400,000 —— and lost.  We agree with the district court's ultimate

refusal to limit Planet's recovery to the settlement amount.

Nationwide nevertheless asks us to rely on Constans,[44] this

time for the proposition that a subrogee is "limited to the lesser

of the amount paid in settlement or the virile portion of what is

determined actually to be owed."[45]  We again decline to follow

Constans, not because its holding on this issue conflicts with our

own precedent but because the quoted language, read in context,

refers to legal, not conventional subrogation.  Accordingly, while

that portion of Constans is a correct statement of the law in

general, its holding is inapplicable to the instant situation.  The

final judgment, after offset, of $373,495.24, is affirmed.

E.  Jury Verdict and New Trial

Finally, Nationwide contends that the jury committed clear

error in finding Bowman 100% liable for the accident and

exonerating Planet's insureds, Scott and Lane.  Nationwide asks us

to reverse the jury verdict on liability.  We decline to encroach

on the province of the jury as finder of fact in the absence of

clear error or some indication that reasonable jurors could not

---

[44] Constans v. Choctaw Transport, Inc., 712 So.2d 885 (La. App. 1997).

[45] Id. at 895.

**22**

possibly have arrived at the verdict.[46]  Both parties presented ample evidence, and we do not find reversible error in the jury's determination.

On the same basis, Nationwide moved for a new trial which the district court denied.  We are convinced that the court did not abuse its discretion in denying that motion and, accordingly, affirm.

III.

Conclusion

As should now be apparent from the foregoing analysis, we conclude that the district court correctly entered judgment against Nationwide based on the jury's determination of liability under the UM insurance provisions of the policies.  The district court correctly held that the Woodfields validly assigned Planet their litigious rights against Nationwide as an element of the settlement of all litigation between the Woodfields and Planet.  Under the law of the forum state (Louisiana), rights in an already-filed suit are freely heritable and thus assignable.  Furthermore, we decline to find the assignment invalid for the Woodfields' failure to obtain the consent of their UM insurer, Nationwide, to settle the claim: Nationwide failed adequately to plead that specific, contract-based defense and thus waived it.

---

[46] See Granberry v. O'Barr, 866 F.2d 112, 113 (5th Cir. 1988); see also Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir. 1978).

We also affirm the district court's entry of judgment in the net amount of $373,495.24. We decline Nationwide's invitation to cap the gross amount of the judgment at $100,000, the limit of one UM policy, by applying Louisiana's anti-stacking law. Instead, we hold that under the forum state's choice of law provisions, Mississippi law governs the interpretation of an insurance policy's terms and that Mississippi law specifically allows stacking of UM policy limits. We also reject Nationwide's argument that Planet's recovery is limited to the $400,000 it paid the Woodfields in the settlement. Applying Louisiana law on sale of litigious rights and assignment, we hold that Planet, as the Woodfields' conventional assignee and subrogee, is entitled to recover the full amount of the final judgment. We find no error in the district court's entry of a gross judgment higher than the $400,000 settlement amount.

Finally, we hold that the jury did not commit reversible error in finding the uninsured —— or underinsured —— motorist 100% liable, and that the district court did not abuse its discretion in denying Nationwide's motion for a new trial on liability. Therefore, the district court's orders and judgments from which Nationwide appeals are, in all respects, AFFIRMED.